## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## OCALA DIVISION

**REBEKAH A. MODZIANOWSKI,**

    **Plaintiff,**

**v.**                                            **Case No: 5:17-cv-4-Oc-18PRL**

**COMMISSIONER OF SOCIAL**
**SECURITY**

    **Defendant.**

## REPORT AND RECOMMENDATION[1]

Plaintiff appeals the administrative decision denying her application for Supplemental Security Income (SSI). Upon a review of the record, the memoranda, and the applicable law, I submit that the Commissioner's decision should be affirmed.

**I.   BACKGROUND**

On July 5, 2012, Plaintiff filed an application for SSI benefits, alleging disability beginning July 13, 1988, which she later amended to July 13, 2012. The claim was denied initially, and upon reconsideration. At Plaintiff's request, a hearing was held on August 19, 2015 (Tr. 34-67), where both the Plaintiff and an impartial vocational expert testified. On September 8, 2015, the Administrative Law Judge (ALJ) issued a notice of unfavorable decision, finding Plaintiff not disabled. (Tr. 11-27). Plaintiff's request for review was denied by the Appeals Council (Tr. 1), and Plaintiff initiated this action on January 6, 2017. (Doc. 1). Plaintiff has exhausted her

---

[1] Within 14 days after being served with a copy of the recommended disposition, a party may file written objections to the Report and Recommendation's factual findings and legal conclusions. *See* Fed. R. Civ. P. 72(b)(3); 28 U.S.C. § 636(b)(1)(B); Local Rule 6.02. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1.

administrative remedies, and the final decision of the Commissioner is ripe for review under 42 U.S.C. § 405(g).

Based on a review of the record, the ALJ found that Plaintiff had the following severe impairments: post-traumatic stress disorder (PTSD), depressive disorder, and a hearing loss. (Tr. 13).

The ALJ found that the Plaintiff had the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: she must avoid moderate exposure to noise. (Tr. 16). She is able to understand, remember and carry out 1-2 step instructions, perform 1-2 step tasks, and have occasional interaction with supervisors, coworkers, and the general public.

Based upon his RFC, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, such as sandwich board carrier, cleaner/housekeeper, and advertising materials distributor. (Tr. 26). The ALJ's finding includes his consideration of Plaintiff's limitations that erode the unskilled occupational base at all exertional levels, and the vocational expert's testimony regarding what functions Plaintiff could perform in light of her limitations. (Tr. 25-6). Accordingly, the ALJ determined that Plaintiff is not disabled.

## II.   STANDARD OF REVIEW

A claimant is entitled to disability benefits when he or she is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to either result in death or last for a continuous period of not less than twelve months. 42 U.S.C. §§416(i)(1), 423(d)(1)(A); 20 C.F.R. §404.1505(a).

The Commissioner has established a five-step sequential analysis for evaluating a claim of disability, which is by now well-known and otherwise set forth in the ALJ's decision. *See* 20 CFR §§ 404.1520(a), 416.920(a); *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). The claimant, of course, bears the burden of persuasion through step four and, at step five, the burden shifts to the Commissioner. *Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5 (1987).

The scope of this Court's review is limited to a determination of whether the ALJ applied the correct legal standards and whether the findings are supported by substantial evidence. *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988) (citing *Richardson v. Perales*, 402 U.S. 389, 390 (1971)). Indeed, the Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. §405(g). Substantial evidence is more than a scintilla – i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (*citing Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *accord Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991). Where the Commissioner's decision is supported by substantial evidence, the District Court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards*, 937 F.2d at 584 n.3; *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). This is clearly a deferential standard.

### III.   DISCUSSION

First, Plaintiff contends that substantial evidence does not support the ALJ's RFC determination. Plaintiff appears to argue that the ALJ failed to properly consider her impairments in combination. However, she fails to clearly articulate what conditions the ALJ failed to consider

or what evidence the ALJ failed to properly evaluate. Instead, Plaintiff simply contends that she has an "IQ between 70 and 80 with eight other severe impairments" and that "by extrapolation it is clear" that plaintiff's ability to maintain full-time employment is "highly unlikely." (Doc. 22 at 24). This vague and unsupported argument is unavailing.

Indeed, the decision shows that the ALJ properly considered Plaintiff's impairments as a whole and substantial evidence supports the RFC determination that Plaintiff can perform work at all exertional levels involving only one-to two-step instructions and tasks and only occasional interaction with supervisors, co-workers, and the general public. In addition to stating that he considered all symptoms in assessing Plaintiff's RFC (Tr. 16), the ALJ discussed Plaintiff's testimony and reports alleging mental and physical symptoms, as well as the objective medical evidence. (Tr. 16-24).

With respect to mental impairments, the ALJ correctly noted that Plaintiff's symptoms were largely precipitated by lack of compliance with typical and noninvasive treatment with psychotropic medications, that Plaintiff was quickly stabilized with medication, and that mental status findings were generally good when Plaintiff was compliant with her medication and other conservative treatment. (Tr. 18-22). Plaintiff fails to make any specific challenge to any of the ALJ's findings with respect to the medical evidence.

Plaintiff saw Dr. Bojarski four times in February and March 2012 for psychotherapy. (Tr. 383-84). Plaintiff reported an increase in symptoms since running out of antidepressants. Dr. Bojarski recommended that Plaintiff restart medication and made other recommendations to improve functioning, including taking short bus trips to increase confidence. Dr. Bojarski noted that Plaintiff had not restarted medication, but she had experienced some improvement in symptoms. Other than completing her GED, Plaintiff was not motivated to follow through on Dr.

Bojarski's recommendations to increase her functioning. Plaintiff had asked Dr. Bojarski whether she should apply for disability benefits, and Dr. Bojarksi had opined that Plaintiff was capable of maintaining some type of employment. Counseling was discontinued because Plaintiff did not feel the need to continue.

The ALJ also discussed Plaintiff's mental health treatment at The Centers. (Tr. 19-21, 513-18, 532-50, 552-54, 579-744). The ALJ noted that although the record documents several hospitalizations for self-injurious behavior through early 2014, at least some of it was driven by noncompliance with medication and Plaintiff was quickly stabilized with medication. (Tr. 19). The ALJ explained that since May 2014, treatment with psychotropic medication has led to significant improvement, and mental health status testing was good when plaintiff was compliant with medications. (Tr. 19-20, 654-55, 661, 666, 672, 676-77).

The ALJ also considered the consultative psychological examination performed by Rodney Poetter, Ph.D. in July 2010. (Tr. 21-22, 308-13). The ALJ stated that although it predated the alleged onset, it was still worthwhile to mention, and noted that it undermined Plaintiff's allegations of disabling limitations. Specifically, Plaintiff reported to Dr. Poetter that she had quit all but one of her former jobs because she was unable to cope, which was contrary to her testimony that she had been fired from all jobs. The ALJ also noted that Dr. Poetter found moderate deficits in immediate memory skills and testing revealed learning and emotional difficulties and borderline intellectual functioning. Dr. Poetter also found that Plaintiff was fully oriented and no evidence of concentration deficits.

The ALJ also considered Plaintiff's limited treatment for other physical impairments. (Tr. 22-24). Plaintiff visited the hospital in December 2010 after falling; her diagnosis was a sprain of her right wrist and contusion of her right knee. (Tr. 471-76). There is no evidence of further

treatment. In May 2012 she returned to the emergency room for a toothache. (Tr. 404-08). In June 2012 she returned to the hospital after another fall, but left before being seen by a physician. (Tr. 464-66). CT scan of the brain showed an ill-defined area of decreased attenuation in the left cerebellar hemisphere, but scans of the cervical and lumbar spine were normal. (Tr. 467-70). Plaintiff was seen at the Florida Department of Health in 2011 and 2012 for various complaints including hypothyroidism, urinary tract infection, and weight control. (Tr. 480-93).  Heart of Florida Health Care in December 2012, April 2013 and October 2013 for routine care of her weight, hypothyroidism, and polycystic ovary condition. (Tr. 564-66, 570-72, 575-78). Physical and psychiatric examination findings were unremarkable at all three visits. In October 2013, Plaintiff reported feeling great and asymptomatic. (Tr. 564).

The ALJ also discussed Plaintiff's consultative physical examination with Robert Williams, M.D. in January 2011. (Tr. 22, 326-30). While Dr. Williams found hearing deficits, Plaintiff's gait was normal, her grip strength and fine manipulation were normal, she had no motor deficits in her upper extremities, and there was no evidence of deformity, swelling, pain, tenderness or other signs of inflammation in her joints. These findings offer support to the ALJ's finding that Plaintiff can perform work at all exertional levels with environmental restrictions accounting for her hearing issues and mental restrictions. Plaintiff fails to specifically challenge the ALJ's findings, nor does she show that any of her conditions supported greater limitations.

Accordingly, the ALJ properly evaluated the record evidence and the RFC is supported by substantial evidence. Plaintiff failed to show (let alone offer any argument as to) how the evidence supports limitations beyond those provided for in the RFC.

Next, Plaintiff challenges the ALJ's step five finding that Plaintiff can perform other work in the national economy. As discussed above, substantial evidence supports the ALJ's

assessment of Plaintiff's RFC, and the ALJ's hypothetical questions to the VE mirrored the limitations included in the RFC. (Tr. 61-63). Accordingly, the ALJ properly relied on the VE's testimony to find that Plaintiff could perform other work.[2]

Nevertheless, Plaintiff baldly claims that "substantial evidence establishes both that plaintiff has multiple severe impairments and her combination of impairments has resulted in a [ ] historic lack of ability to function in the work place for more than a short period of time," and that "no reasonable person could find that the evidence in this matter establishes" that plaintiff could perform the jobs identified by the ALJ, for more than a few months. (Doc. 22 at 25). Plaintiff explains that an unskilled worker such as plaintiff, "who has been terminated from every unskilled job they ever held, within a relatively short period of time can be reasonably expected to be terminated from any other unskilled job may obtain, within the same short period of time." (Doc. 22 at 26). However, Plaintiff cites no authority for the proposition that her performance in past jobs can establish an inability to perform any other work that exists in significant numbers in the national economy.

Here, the ALJ, as he is charged to do, weighed the evidence, resolved material conflicts in testimony, and determined the case accordingly. *Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986). "Even if the evidence preponderates against the [Commissioner's] factual findings, [the Court] must affirm if the decision reached is supported by substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). I submit that substantial evidence supports the ALJ's decision that Plaintiff was not disabled.

**IV.   RECOMMENDATION**

---

[2] Plaintiff did not specifically challenge the VE's testimony, and thus waived any such argument.

For the reasons stated above, it is respectfully **RECOMMENDED** that the ALJ'S decision should be AFFIRMED under sentence four of 42 U.S.C. § 405(g).

**DONE and ENTERED** in Ocala, Florida on January 18, 2018.

*(signature)*
PHILIP R. LAMMENS
United States Magistrate Judge

Copies furnished to:

Counsel of Record
Unrepresented Parties